IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **VERUSHKA FABILA CALVO,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:20-CV-2029-M-BH** |
| | § | |
| **OSCAR GARCIA, Section Chief, Dallas** | § | |
| **District Office, U.S. Citizenship &** | § | |
| **Immigration Services and** | § | |
| **UNITED STATES CITIZENSHIP &** | § | |
| **IMMIGRATION SERVICES,** | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge**[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Before the Court for recommendation is *Defendants' Motion to Dismiss*, filed October 6, 2020 (doc. 6). Based on the relevant filings and applicable law, the motion should be **DENIED**.

**I. BACKGROUND**

Veruschka Fabiola Calvo (Plaintiff) is a native and citizen of Bolivia who was last admitted to the United States as a temporary worker on August 9, 2013. (docs. 1 at 2; 7-1 at 5.)[2] On either October 9 or October 19, 2013,[3] the United States Citizenship & Immigration Services (USCIS) adjusted her status to lawful permanent resident of the United States. (*See id.*) On February 5, 2019, she filed an N-400 Application for Naturalization with USCIS. (docs. 1 at 2; 7-1 at 1). Plaintiff interviewed with a USCIS officer and was tested on English proficiency and United States history

---

[1]By standing order of reference, filed August 5, 2020 (doc. 5), this case was referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions..

[2]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[3] Plaintiff contends that USCIS adjusted her status to lawful permanent resident on October 9, 2013, the date on her residency card. (*See* doc. 10-1 at 8.) This factual dispute does not impact the disposition of the motion to dismiss.

and government on October 24, 2019. (doc. 1 at 7.) She passed both exams, but no decision was made on her application. (*Id.*)

On June 19, 2020, Plaintiff was served with a Notice to Appear (Notice) for removal proceedings by USCIS. (doc. 7-1 at 5-8.)  It alleges that she is subject to removal from the United States because she "did not possess or present a valid labor certification issued by the Secretary of Labor" at the time of her admission. (*Id.* at 8.)  On June 24, 2020, the Notice was filed with the Immigration Court. (*Id.* at 2, 5). On July 21, 2020, USCIS sent Plaintiff a Notice of Administratively Closed Application, explaining that it had administratively closed her naturalization application because removal proceedings had been instituted against her. (*Id.* at 10).

On July 31, 2020, Plaintiff filed this action against USCIS and Oscar Garcia, in his official capacity as Section Chief of the Dallas District Office for USCIS (Defendants), under 8 U.S.C. § 1447(b). (*See* doc. 1.)  She alleges that USCIS did not make a decision on her application for naturalization for more than 120 days after her examination date. (*Id.* at 3.)  She requests a hearing on her application and for the Court to grant her application for naturalization and naturalize her as a United States citizen, or alternatively, an order that Defendants adjudicate the application within ten business days. (*Id.* at 5-6.)

## II.  RULE 12(b)(1)

Defendants first move to dismiss this action for lack of subject matter jurisdiction under Rule 12(b)(1). (doc. 6 at 9-10.)

### A.    <u>Legal Standard</u>

A motion to dismiss under challenges a federal court's subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  Federal courts are courts of limited jurisdiction; without jurisdiction conferred

by the Constitution and statute, they lack the power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A Rule 12(b)(1) motion "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*. Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*.

The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone

3

provide jurisdiction." *Id.*  Facial attacks are usually made early in the proceedings.  *Id.*

If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413.  A factual attack may occur at any stage of the proceedings.  *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).  Regardless of the nature of attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161.

Here, in support of their motion to dismiss, Defendants provide the declaration of Mr. Garcia and copies of the Notice and Notice of Administratively Closed Application. (*See* doc. 7-1.)  The motion therefore presents a factual attack, and no presumption of truth attaches to Plaintiff's factual allegations. *See Williamson*, 645 F.2d at 413.  "Because Plaintiff does not contest [Defendants'] proffered evidence, however, there are no disputed facts to resolve." *McClain v. Bueschel*, No. 3:09-CV-1721-M, 2010 WL 742452 at *2 (N.D. Tex. Mar. 2, 2010).

## B.    8 U.S.C. § 1429

Defendants argue that under 8 U.S.C. § 1429, jurisdiction to adjudicate Plaintiff's naturalization application under § 1447(b) is lacking because of the pending removal proceeding against her. (*See* doc. 6 at 8-9).[4]

---

[4]Section 1447(b) provides:

If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

4

1.      *Removal Proceedings*

Prior to 1990, district courts were vested with the authority to naturalize United States citizens, while the authority to deport aliens was delegated to the Attorney General. *See Shomberg v. United States*, 348 U.S. 540, 544 (1955). This split of immigration functions resulted in a "race" between the Attorney General to remove aliens and the courts to naturalize them. *See id.* To end this race, Congress enacted § 1429, which then provided that "no petition for naturalization shall be finally heard by a *naturalization court* if there is pending against the petitioner a deportation proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act." *See* Immigration and Nationality Act (INA), Pub. L. No. 414, § 318, 66 Stat. 163, 244 (1952) (codified at 8 U.S.C. § 1429 (1952)) (emphasis added). This section became known as the INA's "priority provision" and operated to delay naturalization pending the outcome of deportation proceedings. *See Shomberg*, 348 U.S. at 544.

In 1990, Congress amended the law and "granted the Attorney General exclusive authority to naturalize aliens, removing the authority that courts had previously held to naturalize aliens." *Saba-Bakare v. Chertoff*, 507 F.3d 337, 341 (5th Cir. 2007); *see* Immigration Act of 1990, Pub. L. No. 101-649, § 401(a), 104 Stat. 4978, 5038 (1990) (codified at 8 U.S.C. § 1421(a) (1994)) ("The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General.").[5] Section 1429 was amended by replacing "naturalization court" with "the Attorney

---

8 U.S.C. § 1447(b).

[5]In 2002, Congress transferred the authority to initiate removal proceedings and adjudicate applications for naturalization to the Department of Homeland Security (DHS). *See* Homeland Security Act of 2002, Pub.L. No. 107-296, §§ 402(3), 441(2), 451(b)(2), 116 Stat. 2135, 2178, 2192, 2196) (codified at 6 U.S.C. §§ 202(3), 251(2), 271(b)(2)). The function of adjudicating naturalization petitions was subsequently transferred to USCIS, an agency within the DHS. *See Ajlani v. Chertoff*, 545 F.3d 229, 241 n.2 (3rd Cir. 2012). Statutory references to the authority of the Attorney General to naturalize citizens are therefore interpreted as referring to the authority of USCIS.

General." *See* Immigration Act of 1990, § 407(d)(3) (codified at 8 U.S.C. § 1429 (1990)).  It now provides, in pertinent part, that

> no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act; and *no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act* . . . .

8 U.S.C. § 1429 (emphasis added).  While "Congress removed the district courts' ability to adjudicate prima facie naturalization claims," it "did not remove all jurisdiction from the courts." *Ogunfuye v. Acosta*, 210 F. App'x 364, 367 (5th Cir. 2006).  Section 1421(c) grants district courts jurisdiction to review the denial of a naturalization application upon exhaustion of administrative remedies, while § 1447(b) grants jurisdiction to review administrative delay in determining an application. *Id.*; *see* Immigration Act of 1990, §§ 401(c), 407(d)(14) (codified at 8 U.S.C. §§ 1421(c), 1447(b) (1990)).

In *Saba–Bakare*, the Fifth Circuit held that § 1429 prohibited USCIS from considering the plaintiff's application for naturalization because a removal proceeding was pending against him.  *See* 507 F.3d at 340.  Addressing the plaintiff's argument that the district court had jurisdiction under § 1447(b) to consider his application, it noted that even if jurisdiction existed under that statute, invoking it would be futile based on § 1429.  *Id.* After *Saba–Bakare*, district courts in this circuit have generally interpreted § 1429 as divesting a district court of subject matter jurisdiction while a removal proceeding is pending. *See Zekic v. Rodriguez*, No. A-14-CA-0940-LY, 2015 WL 12751505, at *3 (W.D. Tex. June 8, 2015); *Singhania v. Holder*, No. 3:11-CV-0348-B, 2011 WL 5166420, at *3 (N.D. Tex. Oct. 6, 2011) (collecting cases), *adopted by* 2011 WL 5222824 (N.D. Tex. Oct. 31, 2011); *Khodari v. Napolitano*, No. 3:10-CV-0382-G, 2010 WL 4627810, at *3 (N.D. Tex. Nov. 16, 2010) (collecting cases).

6

### 2. *Warrant of Arrest*

Plaintiff argues that the plain language of § 1429 clearly illustrates Congress's intent that "any removal proceeding preventing the Attorney General from considering the application be 'pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act,'" and because a warrant of arrest has not been issued against her, § 1429 does not apply here. (*See* doc. 10-1 at 15-16 (quoting § 1429).) Defendants respond that under 8 C.F.R. § 318.1, the Notice is equivalent to a warrant of arrest. (doc. 11 at 3-4.) That regulation, which was issued by USCIS's predecessor, states that "[f]or the purposes of [§ 1429], a notice to appear . . . shall be regarded as a warrant of arrest." 8 C.F.R. § 318.1.

Neither the United States Supreme Court nor the Fifth Circuit appear to have specifically addressed USCIS's regulatory interpretation of the term "warrant of arrest" in § 1429 as including a notice to appear.  Although the Fifth Circuit noted that the removal proceeding against the applicant in *Saba–Bakare* had been initiated by a notice to appear, there is no indication that USCIS's interpretation of the term "warrant of arrest" in § 1429 as including a notice to appear was presented as an issue for consideration on appeal or at the district court level, and it was not discussed in the opinions. *See* 507 F.3d at 340; *Saba-Bakare v. Ridge*, No. H-04-4588, 2006 WL 1350298, at *1 (S.D. Tex. May 16, 2006).  An appeal of a naturalization case under the Administrative Procedure Act and the Mandamus Act, in which the plaintiff argued that § 1429 only applies when a warrant of arrest has been issued, is currently pending before the Fifth Circuit. *See Mewa Martinez v. Bryson*, No. 3:20-CV-1840-B, 2021 WL 260452 (N.D. Tex. Jan. 26, 2021); *Mewa Martinez v. Bryson*, No. 21-10322 (5th Cir. Apr. 1, 2021).  Citing § 318.1, the district court in that case found that "due to the issuance of the Notice to Appear, a removal proceeding is pending, as defined by § 1429." *See id.*

at *2.[6]  Like the other three cases in the circuit that have cited 8 C.F.R. § 318.1, it did not expressly

consider the agency's interpretation of § 1429.  *See id.; Robertson-Dewar v. Mukasey*, 599 F.Supp.2d

772, 782–83 (W.D. Tex. 2009); *United States v. Montelongo*, No. 3:07-CV-1556-G, 2008 WL

4693402, at *5 (N.D. Tex. Oct. 23, 2008); *Khodari*, 2010 WL 4627810, at *4-5.

    The only two circuit courts that appear to have squarely considered this issue have reached

different conclusions.  In *Klene v. Napolitano*, 697 F.3d 666, 667 (7th Cir. 2012), the plaintiff sought

an independent decision under 8. U.S.C. § 1421(c) about her entitlement to naturalization.  USCIS

subsequently opened removal proceedings against her and moved to dismiss the lawsuit under §

1429.  *Id.*  The plaintiff argued that § 1429 did not apply because she had never been arrested in

connection with the removal proceeding.  *Id.* at 670 .  The Seventh Circuit acknowledged that § 1429

applies if the pending removal proceeding against the applicant is "*pursuant to a warrant of arrest*,"

but noted that USCIS "has issued a regulation providing that a 'notice to appear' in a removal

proceeding should be treated as a 'warrant of arrest' too." *Id.* (citing 8 C.F.R. § 318.1) (emphasis

original).  Rejecting the plaintiff's argument, the Seventh Circuit briefly noted:

> An agency can't rewrite statutory terms, but it can define its own vocabulary.  Since "arrest" does not imply custody even in police parlance (full custodial arrests are a subset of all arrests), there's no logical problem with an agency calling its official process a "notice to appear" and a "warrant of arrest" at the same time, without needing to issue two separate documents.  On this, at least, all other courts of appeals agree, and we join them.

*Id.*

    More recently, in *Yith v. Nielsen*, 881 F.3d 1155, 1158 (9th Cir. 2018), the Ninth Circuit

---

[6]Notably, the court rejected the argument that § 1429 deprived it of subject matter jurisdiction and found that the statute merely limited the availability of remedies.  *Id*. at 4 (citing *Martinez v. Johnson*, 104 F. Supp. 3d 835, 842 (W.D. Tex. 2015) ("The majority of appellate courts to consider whether § 1429 wholly deprives district courts of jurisdiction have concluded that the section has no such effect.  Instead, these courts have found that § 1429 limits the availability of remedies....") (collecting cases)).

evaluated USCIS's construction of § 1429 under the *Chevron* framework.[7] On appeal of the dismissal of the plaintiffs' naturalization applications under § 1447(b) because they were in removal proceedings, the government argued that "a removal proceeding pursuant to a warrant of arrest" was pending against them for purposes of § 1429 because the regulatory interpretation of "warrant" under 8 C.F.R. § 318.1 includes a "notice to appear." *Id.* at 1165. It contended that this regulatory interpretation was entitled to judicial deference because "warrant of arrest" is ambiguous. *Id.*

The Ninth Circuit explained that consideration of an application for naturalization is precluded under § 1429 "only if a 'removal proceeding' is pending 'pursuant to' (1) 'a warrant of arrest' that (2) has been 'issued under the provisions of this chapter or any other Act.'" *Id.* at 1166. It found that the plain meaning of "warrant of arrest" in the statute was unambiguous.

> According to the dictionary, a "warrant" means "[a] writ directing or authorizing someone to do an act, esp. one directing a law enforcer to make an arrest, a search, or a seizure." *See* Black's Law Dictionary (10th ed. 2014). The term "arrest" means "[a] seizure or forcible restraint" or "[t]he taking or keeping of a person in custody by legal authority, esp. in response to a criminal charge; specif., the apprehension of someone for the purpose of securing the administration of the law, esp. of bringing that person before a court." *Id.* And the term "warrant of arrest" means "[a] warrant issued by a disinterested magistrate after a showing of probable cause, directing a law-enforcement officer to arrest and take a person into custody." *Id.* In other words, the plain meaning of the term "warrant of arrest" is an order authorizing law enforcement to seize and detain a person as necessary for the administration of law.

---

[7] Courts review an agency's interpretation of a statute that it administers under the two-step process set out by the Supreme Court in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). At the first step, the court asks "whether the statute's plain terms 'directly addres[s] the precise question at issue.'" *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 986 (2005) (quoting *id.* at 843). "Step one includes challenges to an agency's interpretation of a statute, as well as whether the statute confers agency jurisdiction over an issue." *Texas v. United States*, 497 F.3d 491, 501 (5th Cir. 2007). "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). "If the statute is clear and unambiguous 'that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *Bd. of Governors of Fed. Rsrv. Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 368 (1986) (quoting *Chevron*, 467 U.S. at 842-43.) The court proceeds to the second step only "[i]f the statute is silent or ambiguous with respect to the specific issue addressed by the regulation" to determine "whether the agency regulation is a permissible construction of the statute." *K Mart Corp.*, 486 U.S. at 291-92. "If the agency regulation is not in conflict with the plain language of the statute, a reviewing court must give deference to the agency's interpretation of the statute." *Id.* (citation omitted).

*Id.* The court also noted that the statute specifies that "the 'warrant of arrest' must be one issued under the provisions of Chapter 12 of the Immigration and Nationality Act (where § 1429 is located), or any other federal act." *Id.* This means "a 'warrant of arrest' for purposes of § 1429 is a writ issued under § 1226 authorizing law enforcement personnel to arrest and detain an alien pending the results of removal proceedings." *Id.* In contrast, a "notice to appear" is statutorily defined as "a 'written notice' that is 'given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any)' providing specified information, including the time and place at which removal proceedings will be held." *Id.* at 1167 (quoting 8 U.S.C. § 1229(a)). It "is akin to a summons that provides an alien with specified information regarding removal proceedings; it does not direct law enforcement to arrest and detain the alien." *Id.* The court emphasized that "unlike warrants of arrest, notices to appear are required in all removal proceedings." *Id.* (citations omitted). "If Congress intended to preclude the government's consideration of a naturalization petition whenever the applicant was in removal proceedings, then it would have had no need to state that § 1429 is applicable only when a removal proceeding is 'pursuant to a warrant of arrest.'" *Id.*

The Ninth Circuit expressly disagreed with the Seventh Circuit's decision in *Klene*, explaining that it "did not use the tools of statutory interpretation to determine whether 'warrant of arrest' has an unambiguous meaning in the context of § 1429," and did not "consider whether a warrant of arrest 'issued under the provisions of this chapter or any other Act' included arresting and detaining an alien." *Id.* at 1168. "Rather *Klene* merely stated, without citation or reasoning, that the word arrest 'does not imply custody even in police parlance (full custodial arrests are a subset of all arrests).'" *Id.* (quoting 697 F.3d at 670). Because Congress "clearly defined 'warrant of arrest' as

a writ that issues to arrest and detain an alien, and is not the same as a notice to appear," the Ninth

Circuit rejected USCIS's interpretation of "warrant of arrest" as defined in 8 C.F.R. § 318.1. *Id.*

Ultimately, it concluded that § 1429 was inapplicable to the plaintiffs' case because despite their

receipt of notices to appear, their removal proceedings were not pursuant to "a warrant of arrest

issued under the provisions of Chapter 12 of the INA." *Id.* (quotation omitted).

The Ninth Circuit's *Chevron* analysis of § 1429 is persuasive. *See Yith*, 881 F.3d 1165-68.

As it explained, the phrase "warrant of arrest" is not ambiguous and should be construed under its

plain and ordinary meaning as a writ that issues to arrest and detain an individual. *Id.* at 1166. This

is distinct from a "notice to appear," which Congress defined as a "written notice" served on the alien

that provides specific information about the removal proceedings against him. *See* 8 U.S.C. §

1229(a)(1); *see also Pereira v. Sessions*, 138 S. Ct. 2105, 2116 (2018) (explaining that § 1229(a)

"speaks in definitional terms" when describing the requirements of a "notice to appear"). *Klene*

accepted USCIS's interpretation of "warrant of arrest" in § 318.1 without conducting a *Chevron*

analysis. *See* 697 F.3d at 670. Where, as here, "the only or principal dispute relates to the meaning

of the statutory term, the controversy must ultimately be resolved, not on the basis of matters within

the special competence of the [agency], but by judicial application of canons of statutory

construction." *Barlow v. Collins*, 397 U.S. 159, 166 (1970). "[J]udicial review of such administrative

action is the rule, and nonreviewability an exception which must be demonstrated." *Id.*

Defendants rely on the Fifth Circuit's decision in *DeLeon-Holguin v. Ashcroft*, 253 F.3d 811,

815 (5th Cir. 2001), which generally held that "[r]emoval proceedings commence when the [USCIS]

files the appropriate charging document with the immigration court." (doc. 6 at 7.) At issue was

whether removal proceedings against the petitioner had "commenced" after the effective date of the

11

Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), a statute that restricted judicial review of certain removal orders. *DeLeon-Holguin*, 253 F.3d at 812. The relevant regulation provided that removal proceedings "commence when a charging document is filed with the Immigration Court." *Id.* at 814 (quoting 8 C.F.R. § 3.14(a)). The court deferred to the regulatory definition of "commence" for the purpose of determining whether the IIRIRA applied, explaining that "courts generally defer to procedural regulations governing administrative practice." *Id.* at 814 (citing *Morales–Ramirez v. Reno*, 209 F.3d 977, 982 (7th Cir. 2000)).

The Fifth Circuit's deference to the regulatory definition of "commence" in concluding that "removal proceedings commence when the INS files the *appropriate* charging document with the immigration court" is not inconsistent with the plain language of § 1429. *See DeLeon-Holguin*, 253 F.3d at 815 (emphasis added). Its decision does not state that the filing of *any* charging document is sufficient to commence removal proceedings; the filing of an *appropriate* charging document is required. *Id.* Under § 1429, the "appropriate" charging document is defined as a "warrant of arrest." The relevant regulation equates a notice to appear with a warrant of arrest, but judicial deference to agency interpretation of a statute it administers "is due only 'if the agency interpretation is not in conflict with the plain language of the statute.'" *Texas*, 497 F.3d at 501 (quoting *Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 417 (1992)).[8]

Here, Defendants do not claim that the meaning of "warrant of arrest" in § 1429 is ambiguous, or that Congress intentionally left that phrase for agency interpretation. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("Our first step in interpreting a statute is to determine whether the

---

[8] The  absence of a "warrant of arrest" was not discussed in the other cases cited by Defendants that have dismissed complaints seeking naturalization for lack of subject matter jurisdiction due to a pending removal proceeding. *See Zekic*, 2015 WL 12751505, at *3; *Singhania v. Holder*, 2011 WL 5166420, at *3; *Khodari*, 2010 WL 4627810, at *4-5.

12

language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."). If Congress clearly and unambiguously intended for the issuance of a warrant of arrest in the removal against the alien under § 1429, the regulations may not give effect to a removal proceeding that is not subject to a warrant of arrest. *See K Mart Corp.*, 486 U.S. at 291-92. Because the evidence does not show that the removal proceeding pending against Plaintiff is "pursuant to a warrant of arrest issued under the provisions of Chapter 12 of the INA," § 1429 does not apply and does not preclude judicial review of her application under § 1447(b). *See Yith*, 881 F.3d at 1168 (citing § 1429); *see also Kabura v. McNeer*, 448 F. Supp. 3d 1274, 1282 (D. Utah 2020) ("Because Mr. Kabura was issued a notice to appear, not a warrant of arrest, to the extent that the first provision would limit the court's jurisdiction and authority, it does not apply here."); *Sanga v. Barr*, __ F. Supp. 3d __, 2020 WL 6880964, at *10 (S.D.Ia Nov. 24, 2020) (concluding that "the issuance of a 'notice to appear' under the INA does not trigger the statutory prohibition of 8 U.S.C. § 1429 to bar USCIS from considering the naturalization application of an applicant against whom are pending 'a removal proceeding pursuant to a warrant of arrest.'"); *Murray v. Cissna*, No. 2:18-cv-2059-DCN, 2019 WL 2358951, at *3 (D.S.C. June 4, 2019) ("The agency's decision that a notice to appear would suffice as a "warrant of arrest" as required by § 1429 is a faulty interpretation of Congressional intent and an impermissible reading of that statute. . .Thus, the court finds that the NTA that was issued to Murray does not satisfy § 1429's requirement that he be in removal proceedings 'pursuant to a warrant of arrest.' Because § 1429 is not in effect in Murray's case and does not preclude the court

from considering his suit under § 1447, the court denies the motion to dismiss."). Accordingly, Defendants' motion to dismiss under 12(b)(1) for lack of jurisdiction should be denied.[9]

### III.  RULE 12(b)(6)

Defendants move to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (doc. 6 at 10-11.)

### A.  <u>Legal Standard</u>

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).

Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above

---

[9]Because § 1429 has no application here, since Plaintiff's removal proceeding is not "pursuant to a warrant of arrest," it is not necessary to reach her other argument that § 1429 only restricts the naturalization authority of the Attorney General. (*See* doc. 10-1 at 12-15.)

14

the speculative level." *Twombly*, 550 U.S. at 555.  In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted).  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 683.

As noted, a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196.  When a party presents "matters outside the pleadings," a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  However, "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

Nevertheless, "pleadings" for purposes of a motion to dismiss include attachments to the complaint.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted).  Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*

15

*v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citation omitted). Accordingly, documents falling in these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

As discussed, Defendants provide the declaration of Mr. Garcia and copies of the Notice and the Notice of Administratively Closed Application. (*See* doc. 7-1.) Although the notices may be considered central to Plaintiff's claims, and therefore part of the pleadings, *see Collins*, 224 F.3d at 498-99, none of the documents have been considered for purposes of the Rule 12(b)(6) motion in an abundance of caution. Conversion of Defendants' motion to dismiss into a motion for summary judgment is therefore unnecessary. *See id.*; *Katrina Canal Beaches*, 495 F.3d at 205.

**B.      Failure to State a Claim**

Defendants argue that Plaintiff's complaint should be dismissed for failure to state a claim because "the district court has no appropriate basis to adjudicate her naturalization petition when deportation proceedings are pending." (doc. 6 at 10.)

Here, Plaintiff alleges that she applied for naturalization and that it has been more than 120 days since she passed her examination, but no decision has been made on her application. (doc. 1 at 3.) She requests that the Court "grant her application for naturalization and to naturalize her as a U.S. citizen," or alternatively, to "order Defendants to determine the application within ten business days of this Court's order." (*Id.* at 5.) Her allegations support a claim for relief under § 1447(b). Although there is a removal proceeding pending against her, as discussed, the restriction on considering an application during the pendency of a removal proceeding under § 1429 does not apply if that

16

proceeding is not pursuant to a warrant of arrest. *See Yith*, 881 F.3d 1168.  The motion to dismiss under Rule 12(b)(6) should therefore be denied.

## IV.  RECOMMENDATION

Defendants' motions to dismiss under Rules 12(b)(1) and 12(b)(6) should be **DENIED.**

**SO RECOMMENDED** on this 7th day of May, 2021.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

17